IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PANDORIA S. OKPULOR, §
 §
    Plaintiff, §
v. § Civil Action No. 3:04-CV-1755-M
 §
PNC BANK, §
 §
    Defendant. §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant PNC Bank's Motion for Summary Judgment, dated August 29, 2005. The Court **GRANTS** the Motion **IN PART**, and dismisses Plaintiff's claims of discrimination and harassment based on disability.

The Court will not reach this case on the three-week docket beginning January 9, 2006. The Court **CANCELS** the pretrial conference currently scheduled for January 6, 2006, at 2:30 p.m. and **STAYS** the December 19, 2005, deadline for submission of pretrial materials. The case will be scheduled, as appropriate, after the Court receives and considers the supplemental briefing requested by this Order.

## I. BACKGROUND FACTS

Plaintiff Pandoria Okpulor began working for Defendant PNC Bank ("PNC") on October 6, 1997. Okpulor worked as a lockbox clerk at PNC's office in Richardson, Texas, and was responsible for processing customer transactions, including checks and money orders.

Before beginning work with PNC, Okpulor had been diagnosed with lupus, a chronic disease that causes inflammation and pain. Okpulor alleges that she also suffers from arthritis as a result of her lupus. She has undergone hip and knee replacement surgery, and claims difficulty in walking.

Okpulor alleges that in early April 2003 one of her supervisors, Karen Thompson, told Plaintiff to "stop dragging [her] feet". Okpulor claims that Thompson was aware of Plaintiff's physical impairments when she made that statement. On May 5, 2003, Okpulor called Defendant's "Ethics and Compliance Reporting Hotline" (the "Hotline") to report this incident.

On May 8, 2003, Okpulor and Thompson had a disagreement about whether Plaintiff should work on a specific customer account, (the "Hospital Account"). Okpulor claims that Thompson did not want Okpulor to work on the Hospital Account. She claims that Thompson "pushed the work into her chest". PNC contends that Okpulor left work early that day, without permission. Okpulor called the Hotline on May 28, 2003, and reported this incident.

Wayne West, PNC's Vice President of Employee Relations, states that Plaintiff left work prior to the end of her shift on November 20, 2003. That prompted him to investigate the events of that day and those of May 2003. After concluding his investigation, West states that he decided to terminate Okpulor's employment.

Okpulor brought this action, *pro se*, on August 12, 2004. She alleges discrimination and harassment on the basis of disability and retaliation.[1] Defendant moved for summary judgment on August 29, 2005.

---

[1]Okpulor's initial Complaint did not mention retaliation. However, United States Magistrate Judge Jeff Kaplan sent Okpulor a *Spears* questionnaire. See *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). On August 19, 2004, Okpulor responded, alleging retaliation based on speech protected by the ADA. Specifically, Okpulor wrote "Yes, I believe that it were [sic] a [sic] employment decision was [sic] made because of my [disability] at work. Because I may [sic] several complaints how I were [sic] treated at PNC Bank. [sic]" The questionnaire acts as an amendment to the pleading. See *Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976); *Cay v. Estelle*, 789 F.2d 318, at 323 (5th Cir. 1986), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989); *accord Jackson v. Griffith*, 1:93-CV-424, 1995 U.S. Dist. LEXIS 516, at *2 (E.D. Tex. Jan. 10, 1995) (finding that a questionnaire constituted an amended pleading). As a result, the Court considers Okpulor's retaliation claim in its analysis. See *Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002) (*pro se* complaints are liberally construed).

## II. STANDARD OF REVIEW

Summary judgment is warranted when the facts and law, as reflected in the pleadings, affidavits, and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Pourgholam v. Advanced Telemktg. Corp.*, No. 3:01-CV-2764-H, 2004 U.S. Dist. LEXIS 10659, at *2-3 (N.D. Tex. June 9, 2004) (citing Fed. R. Civ. P. 56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. Fed. R. Civ. P. 56(e). The court must review all evidence in the record, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence favorable to the nonmovant that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000). Further, "the court must draw all justifiable inferences in favor of the nonmovant." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch Props.*, 140 F.3d at 625. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991). However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts. *Lynch Props.*, 140 F.3d at 625. Further, a party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

### III. ANALYSIS

A. Okpulor's Claims of Discrimination and Harassment based on Disability

The Court applies the modified *McDonnell Douglas* approach to claims of discrimination based on disability. *See Bergen v. Continental Cas. Co.*, 368 F. Supp. 2d 567, 572-73 (N.D. Tex. 2005) (Sanders, J.) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-46 (1973); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)). Under this framework,

> [T]he plaintiff must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative).

*Rachid*, 376 F.3d at 312 (quotations and citations omitted). Under this regime, Okpulor must first establish a prima facie case of discrimination. *Id.*; *Keelan*, 407 F.3d at 342. To prove a prima facie case of discrimination, Plaintiff must show that she was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment

action; and (4) treated differently from others similarly situated. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005) (citing *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001)). If she presents a prima facie case, she raises a presumption of discrimination. *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993). Defendant can rebut this presumption by articulating a legitimate, nondiscriminatory reason for its actions. *Shackelford*, 190 F.3d at 404. This burden on the employer is only one of production, not persuasion, involving no credibility assessments. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). At this point, to defeat summary judgment, Okpulor must present sufficient evidence to create a genuine issue of material fact that either (1) Defendant's nondiscriminatory reason is not true, but is instead a pretext for discrimination (the "pretext" alternative), or (2) Defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is Okpulor's disability (the "mixed-motives" alternative). *See Rachid*, 376 F.3d at 312.

To succeed on a claim of disability-based harassment, Okpulor must prove (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action. *Flowers v. S. Regional Physician Servs., Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001).

The ADA provides that:

> No covered entity shall discriminate against a qualified *individual with a disability* because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (emphasis added). Okpulor's claims of discrimination and harassment based on disability fail because the summary judgment evidence would not allow a reasonable jury to conclude that Okpulor was an "individual with a disability" for purposes of the ADA at the time any contested events took place. As a result, she cannot claim membership in a protected class, the first element in her claims of discrimination and harassment.

To establish a disability, Plaintiff must fulfill the three-part test expounded in *Waldrip v. Gen. Elec.*, 325 F.3d 652, 654 (5th Cir. 2003). Because the ADA defines disability as "a physical . . . impairment that substantially limits one or more major life activities of such individual;" Okpulor must show (1) a physical impairment that (2) substantially limits (3) a major life activity. *See id.* (citing 42 U.S.C. § 12102(2)(A)). In interpreting this standard, the Fifth Circuit held that

> These terms need to be interpreted strictly to create a demanding standard for qualifying as disabled. In enacting the ADA, Congress expressly estimated that some 43,000,000 Americans have one or more physical or mental disabilities. When one compares this estimate to the countless aches and pains from which most of us unhappily suffer, one can easily see that a lenient interpretation would expand the class of disabled persons far beyond Congress's expectation. We therefore conduct a rigorous and carefully individualized inquiry into [the plaintiff's] claimed disability to fulfill our statutory obligation to determine the existence of disabilities on a case-by-case basis.

*Id.* at 654-55 (citations and quotations omitted).

Okpulor alleges that she suffers from lupus and arthritis, which substantially limit walking, a major life activity. Without addressing the first and third elements, Defendant argues that Okpulor has not produced evidence of the second element—that Okpulor's disabilities "substantially limit" her ability to walk. The Court agrees. The Fifth Circuit addressed this element in *Waldrip*:

> The substantial-limit requirement is the linchpin of § 12102(2)(A). Without it, the

> ADA would cover any minor impairment that might tangentially affect major life activities such as breathing, eating, and walking. For this reason, an impairment must not just limit or affect, but must substantially limit a major life activity. The effects of an impairment must be severe to qualify as a disability under the ADA.

*Id.* at 655 (quotations, citations, and emphasis omitted).

In her deposition, Okpulor stated that she cannot walk for long distances;[2] and she suggested that the longest distance she walks is between her car and the place to which she is traveling, but she grocery shops with her children, and has performed the duties associated with her job as a lockbox clerk.[3]

Walking is, of course, a major life activity. *See Waldrip*, 325 F.3d at 655. However, Plaintiff has not shown that her impairment substantially limits her ability to walk. Okpulor's deposition only establishes that Plaintiff's impairment inhibits her ability to walk for long distances.

In a case in which the Plaintiff experienced similar physical difficulties, the Fifth Circuit concluded that the Plaintiff's impairment did not substantially limit the activity of walking.[4] *See Talk v. Delta Airlines, Inc.*, 165 F.3d 1021 (5th Cir. 1999). In *Talk*, the plaintiff, an airline employee, alleged disability discrimination under the ADA and TCHRA. Her claimed disability was a limp caused by a childhood injury, which resulted in her right

---

[2] There is conflicting testimony on this subject. At one point, Okpulor testified that she could walk "a mile or something".

[3] In her description of her "typical day" at her job, Okpulor included walking as part of her duties. After signing in, Okpulor was required to go to the breakroom to meet her supervisor, and then make the return trip to her desk. Okpulor acknowledged that, at times, she would leave her workstation to receive assignments.

[4] Additionally, two other circuits have addressed similar claims. In *Penny v. UPS*, the Sixth Circuit recognized that "moderate difficulty or pain experienced while walking" does not rise to the level of disability. 128 F.3d 408, 415 (6th Cir. 1997) (finding that a plaintiff who could run for fifteen minutes at a slow pace was not disabled). In *Kelly v. Drexel University*, the Third Circuit stated that a plaintiff who showed difficulty climbing stairs did not prove a disability. 94 F.3d 102, 106 (3d Cir. 1996).

leg being shorter than her left, and her right foot being in a permanently flexed position. *Id.* In determining whether Talk's injury constituted a disability, the Fifth Circuit explained, "we have found few cases defining what constitutes a substantial limitation on a person's ability to walk. It is clear, however, that moderate difficulty experienced while walking does not rise to the level of a disability." *Id.* Although the plaintiff asserted that she "walk[s] with a limp and move[s] at a significantly slower pace than the average person," the court concluded that, "although Talk experiences some impairment in her ability to walk, it does not rise to the level of a substantial impairment as required by the ADA and TCHRA." *Id.*

The Court finds the case at hand similar to *Talk*, in that both involve individuals who are hampered in their ability to walk, but not severely so.[5] Although Okpulor may not be able to walk for extended distances, the Court finds, consistent with the Fifth Circuit's determination in *Talk*, that such impairment does not rise to the level of a substantial limitation upon the ability to walk. *Accord Martin v. Aimco Props.*, 3:01-CV-2050-M, 2002 U.S. Dist. LEXIS 12880, at *8-9 (N.D. Tex. July 16, 2002) (Lynn, J.).

Even if a plaintiff does not have an actual impairment that substantially limits one or more major life activities, she may claim the protection of the ADA if she is "regarded as

---

[5] Okpulor claims to use a cane, but that fact does not change this Court's ultimate conclusion. A person who uses assistive devices, like a cane, may be substantially limited in walking. *See United States EEOC v. E.I. du Pont de Nemours*, 347 F. Supp. 2d 284, 289 (E.D. La. 2004). The use of assistive devices is not determinative; rather, it is one of many factors a court may consider in determining disability. *Cf. McGarthy v. Ridge*, 3:02-CV-1111-P, 2004 U.S. Dist. LEXIS 12800, at *4 (N.D. Tex. July 7, 2004) (Solis, J.) (finding a substantial limitation upon the ability to walk when the plaintiff had "great difficulty" walking, even with aids, and could not successfully board a van provided for travel at her work). Okpulor has provided evidence that her doctor recommended the use of a cane. However, Okpulor has not argued why her use of a cane evidences a burden upon her which is more onerous than the moderate difficulty with walking found insufficient to establish a disability in *Talk*. As a result, the use of a cane does not change the Court's conclusion. *Cf. Williams v. Square D Co.*, 3:04-CV-0162-D, 2005 U.S. Dist. LEXIS 19859, at *22 (N.D. Tex. Sept. 13, 2005) (Fitzwater, J.) (finding that the use of a cane did not evidence a disability under the Texas Commission on Human Rights Act) (citing *Talk*, 165 F.3d at 1025).

having such an impairment". *Waldrip*, 325 F.3d at 657 (citing 42 U.S.C. § 12102(2)(c)). A plaintiff is regarded as having a disability if she (1) has an impairment that is not substantially limiting but which the employer perceives as substantially limiting, (2) has an impairment that is substantially limiting only because of the attitudes of others, or (3) has no impairment but is perceived by the employer as having a substantially limiting impairment. *Id.*

Okpulor has not presented sufficient evidence to create a fact issue as to whether Okuplor had a "regarded as" disability. In her deposition, Okpulor alleged that one of her supervisors, Karen Thompson, told Okpulor to stop "dragging her feet". For purposes of evaluating the summary judgment motion, the Court must infer that Thompson was commenting on Okpulor's difficulty with walking. However, this evidence alone is insufficient to establish a "regarded as" disability. Okpulor must show that Thompson perceived that she had a *substantially limiting* disability. Thompson's statement only shows that she recognized Okpulor had a moderate difficulty walking. Okpulor has not presented evidence that showed that Thompson or PNC's other employees perceived that Okuplor had a "great difficulty" walking. *Cf. McGarthy*, 2004 U.S. Dist. LEXIS 12800, at *4; *Lynch Props.*, 140 F.3d at 625 ("[I]n the absence of proof, a court will not conclude that the nonmoving party could prove the required facts.")

Because Okpulor has not presented evidence sufficient to raise a genuine issue of material fact as to whether she was disabled or whether her major life activities were substantially limited, Defendant's Motion for Summary Judgment is **GRANTED** as to her discrimination and harassment claims. *See Bergen*, 368 F. Supp. 2d at 579.

B. Retaliation

In its Motion, PNC did not address Plaintiff's claim of retaliation. Plaintiff's Original

Complaint did not allege retaliation. Okpulor's *Spears* questionnaire raised retaliation, and the Court considers the questionnaire as an amendment to her Complaint. *Cf. Spears*, 766 F.2d 179. As a result, Okpulor's retaliation claim is properly before this Court. Because the claim was not in Okpulor's Original Complaint, the Court will grant leave for Defendant to file an additional motion for summary judgment to address Okpulor's retaliation claim.

## IV. CONCLUSION

The Court **GRANTS** Defendant's Motion for Summary Judgment **IN PART**, and dismisses Okpulor's claims of discrimination and harassment based on disability. The Court **GRANTS** Defendant leave to file an additional motion for summary judgment addressing Okpulor's retaliation claim. Defendant must file such a motion within twenty days of the date of this Order.

**SO ORDERED.**

December 14, 2005.

_____
BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS